*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0202p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

In re: PATRICK GLANCE,

                *Debtor.*

---

PATRICK GLANCE,

                *Appellant,*

    *v.*

KRISPEN S. CARROLL, Trustee,

                *Appellee.*

No. 06-1630

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
Nos. 05-74841; 05-51905—
Bernard A. Friedman, Chief District Judge.

Argued: April 23, 2007

Decided and Filed: June 1, 2007

Before: SUHRHEINRICH, CLAY, and SUTTON, Circuit Judges.

---

## COUNSEL

**ARGUED:** Elizabeth M. Abood, Livonia, Michigan, for Appellant. Krispen S. Carroll, OFFICE OF CHAPTER 13 TRUSTEE, Detroit, Michigan, for Appellee. **ON BRIEF:** Elizabeth M. Abood, Charles J. Schneider, Livonia, Michigan, for Appellant. Krispen S. Carroll, OFFICE OF CHAPTER 13 TRUSTEE, Detroit, Michigan, for Appellee.

---

## OPINION

---

    SUTTON, Circuit Judge. Is a security interest in a debtor's property a "noncontingent, liquidated, secured debt[]" under § 109(e) of the Bankruptcy Code, which at the time of this filing contained a $922,975 debt limit for filing a Chapter 13 petition? It is, we conclude, and accordingly we affirm the dismissal of Patrick Glance's bankruptcy petition.

1

I.

On April 14, 2005, Patrick Glance filed a petition for relief under Chapter 13 of the Bankruptcy Code. Among his assets, Glance listed two houses—one in Plymouth, Michigan, one in Pinckney, Michigan—that he owned jointly with his wife. The Plymouth house, worth $1,200,000, was subject to a mortgage of $980,000; the Pinckney house, worth $302,000, was subject to a mortgage of $133,000. Because Glance's wife alone signed the promissory notes in connection with each loan, Glance was "not personally obligated to pay the sums secured" by either mortgage. JA 125. Glance co-signed the mortgage papers, however, giving each lender a mortgage lien on the jointly owned property.

On October 7, Krispen Carroll (the chapter 13 trustee) moved to dismiss Glance's bankruptcy petition, claiming Glance's secured debts exceeded the $922,975 cap for filing a Chapter 13 petition. *See* 11 U.S.C. § 109(e). After a hearing on the motion, the bankruptcy court dismissed Glance's petition. The district court affirmed the bankruptcy court's order.

II.

The "principal purpose of the Bankruptcy Code is to grant a fresh start to the honest but unfortunate debtor." *Marrama v. Citizens Bank of Mass.*, 127 S. Ct. 1105, 1107 (2007) (internal quotation marks omitted). Chapter 13 provides one avenue for obtaining relief, allowing a relatively small debtor to reschedule his payment obligations to his creditors, "retain his property and avoid the stigma of a straight bankruptcy." *In re Pearson*, 773 F.2d 751, 753 (6th Cir. 1985). To ensure that only relatively small debtors invoke the protections of Chapter 13, the Code contains the following eligibility criteria:

> Only an individual with regular income that owes, on the date of the filing of the petition, . . . noncontingent, liquidated, secured debts of less than $922,975 . . . may be a debtor under chapter 13 of this title.

11 U.S.C. § 109(e). Even though Glance had no personal obligations on the promissory notes that his wife signed, the question here is whether the mortgages on the two properties (worth a total of $1,113,000) amount to (1) debts attributable to Glance that are (2) liquidated, (3) secured and (4) noncontingent. In our view, they are, and accordingly the limitation applies.

*First*, the mortgages are "debts" within the meaning of the Bankruptcy Code. The Code defines "debt" as "liability on a claim." *Id.* § 101(12). And the Code defines "claim" to mean a

> (A) *right to payment*, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) *right to an equitable remedy* for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

*Id.* § 101(5) (emphases added).

By defining "debt" in terms of "claim," Congress has made "the meanings of 'debt' and 'claim' . . . coextensive." *Penn. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 558 (1990), *superseded on other grounds by* Criminal Victims Protection Act of 1990, Pub. L. No. 101–581, § 3, 104 Stat. 2865. "[A] creditor has a 'claim' against the debtor; the debtor owes a 'debt' to the creditor." *In re Knight*, 55 F.3d 231, 234 (7th Cir. 1995) (internal quotation marks omitted). And

by defining "claim" broadly, Congress has "adopt[ed] the 'broadest possible' definition of 'debt,'" *Davenport*, 495 U.S. at 564, the broadest possible definition in other words of any "right to payment," *see In re Mazzeo*, 131 F.3d 295, 302 (2d Cir. 1997), and of any "right to an equitable remedy."  These rights, we are told, mean "nothing more nor less than an enforceable obligation." *Davenport*, 495 U.S. at 559.

In *Johnson v. Home State Bank*, 501 U.S. 78 (1991), the Court applied the definition of "claim" to a mortgage lien.  The individual signed a promissory note with the bank and gave the bank a security interest in his farm.  After the individual defaulted on the promissory note and the bank began foreclosure proceedings, he filed a liquidation petition under Chapter 7 of the Bankruptcy Code. When the bankruptcy court discharged his personal liability on the note and lifted the automatic stay, the bank began foreclosure proceedings again on the theory that the Chapter 7 discharge removed the individual's *personal* liability on the note but not his *in rem* liability on the lien.  *Id.* at 80.  The individual sought protection from the bankruptcy court again, this time under Chapter 13, and the bankruptcy court again prevented the bank from foreclosing because the lien was a "claim" in his bankruptcy estate.  *Id.* at 81.

In agreeing with the bankruptcy court's construction of the definition of "claim," the Supreme Court reasoned that, "[e]ven after the debtor's personal obligations have been extinguished, the mortgage holder still retains a 'right to payment' in the form of its right to the proceeds from the sale of the debtor's property." *Id.* at 84.  "Alternatively," the Court added, "the creditor's surviving right to foreclose on the mortgage can be viewed as a 'right to an equitable remedy' for the debtor's default on the underlying obligation.  Either way, there can be no doubt that the surviving mortgage interest corresponds to an 'enforceable obligation' of the debtor." *Id.*  "[A] bankruptcy discharge," the Court concluded, "extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*." *Id.*

*Johnson* controls us here.  If, as *Johnson* concludes, a lien is a "claim against the debtor," then it follows, under the Code's equivalent treatment of the terms, that a lien is a "debt" owed by the debtor.  *Johnson*, 501 U.S. at 84, 86 (noting that "the mortgage interest that passes through a Chapter 7 liquidation . . . has the same properties as a nonrecourse loan," which gives the creditor rights against the property of the debtor but not against the debtor personally).  Much like the individual in *Johnson*, Glance does not have personal liability on the promissory notes but he continues to have *in rem* liability on the liens.  Nor need the debtor be personally liable on a claim for it to be valid; the Code provides that a "claim against the debtor" "includes [a] claim against property of the debtor."  11 U.S.C. § 102(2); *see Johnson*, 501 U.S. at 85.

Glance responds that we should not treat "debts" and "claims" the same in this setting.  Equating the two, he says, will "enable a creditor to have a debtor's case dismissed by merely filing a claim for an amount that exceeds the limits . . . regardless of whether the creditor's claim has any legal basis."  Br. at 16–17.  An initial obstacle to this argument, as we have noted, is that Congress (and the Supreme Court) have already spoken on the matter:  The National Legislature intended "the meanings of 'debt' and 'claim' [to] be coextensive." *Davenport*, 495 U.S. at 558; *see Johnson*, 501 U.S. at 84 n.5.  A second obstacle is that the eligibility requirements of § 109(e) create a gateway into the bankruptcy process, not an ongoing limitation on the jurisdiction of the bankruptcy courts. "Chapter 13 eligibility should normally be determined by the debtor's schedules checking only to see if the schedules were made in good faith." *In re Pearson*, 773 F.2d at 757.  Because a *debtor* cannot fairly be accused of bad faith for omitting a creditor's demand that has no "legal basis," we are hard pressed to foresee when or how Glance's scenario would arise.  A third obstacle is that a creditor's demand without "any legal basis" is not even a "claim" under the Code.  One cannot have a "right to payment" (and thus a "claim," 11 U.S.C. § 101(5)) absent at least some "legal basis."  And if such a demand is not a "claim," it is not by Glance's own logic a "debt" that could render a

debtor ineligible for Chapter 13. In the final analysis, just as a debtor may seek protection from a bank's foreclosure on a lien because it is a "claim" under the Code, *see Johnson*, 501 U.S. at 85, so a debtor must treat the same lien as a "debt" in determining whether he has exceeded the debt limitations for filing a Chapter 13 petition.

*Second*, the mortgage liens are "liquidated" debts, which is to say debts whose "amount is readily ascertainable." *In re Pearson*, 773 F.2d at 754; *see also* 2 Collier on Bankruptcy ¶ 109.06[2][c], p. 109-45 (rev. 15th ed. 2006). Glance affixed a value to each mortgage in his original schedules, and the papers securing the mortgage on the Plymouth house confirm his valuation of that debt at $980,000. At no point in his appellate brief has Glance argued that this lien or the other lien should be valued at any amount other than the full value of the mortgage.

*Third*, the mortgage liens are "secured." Glance nowhere disputes that the creditors secured the liens against the Plymouth and Pinckney houses.

*Fourth*, these liens are "noncontingent." "[A debt] is noncontingent when all of the events giving rise to liability for the debt occurred prior to the debtor's filing for bankruptcy." *In re Mazzeo*, 131 F.3d at 303; *see* 2 Collier on Bankruptcy ¶ 109.06[2][b], p. 109-44 ("[I]f a debt does not come into existence until the occurrence of a future event, the debt is contingent."). In this instance, no future events need to occur in order for the creditors to have an interest in Glance's properties. The creditors secured their claims to Glance's properties when Glance signed the respective mortgage papers, and he signed those papers long before he sought bankruptcy protection.

Once Glance signed the mortgage papers, the creditors immediately obtained a host of present rights in the two properties. For example, the creditor on the Plymouth house has "legal title to the interests granted" in the mortgage, JA 119; the creditor may "make reasonable entries upon and inspections of the Property," JA 122; and the creditor may require Glance to "defend generally the title to the Property against all claims and demands," JA 119, to "pay all taxes, assessments, charges, fines, and impositions attributable to the Property [that] can attain priority over" the mortgage, JA 121, to insure the house against fire, earthquakes, floods and other disasters, *id.*, to "maintain the Property in order to prevent the Property from deteriorating or decreasing in value," JA 122, and to "promptly repair the Property if damaged to avoid further deterioration or damage," *id.* That is not all. The creditor also has the "right to foreclose and sell the Property" if the Glances default on the mortgage, JA 119, *see, e.g.*, *Guardian Depositors Corp. v. Powers*, 296 N.W. 675, 678 (Mich. 1941); the right to demand immediate repayment of the debt if the Glances attempt to transfer the property without prior written consent, JA 126; and the right to "require immediate payment in full of all sums secured by this Security Instrument without further demand and [to] invoke the power of sale," JA 127, if "any action or proceeding . . . is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument," JA 124.

Glance responds that the mortgage liens remain contingent debts because the lenders cannot repossess and sell the properties immediately. Analogizing his debt to a guarantee on an unsecured loan, he points out, "Without a default on the notes, there is no claim." Br. at 20. Yes, a guarantee represents a contingent debt until the principal obligor defaults. *See In re Fischel*, 103 B.R. 44, 47–48 (Bankr. N.D.N.Y. 1989). But a mortgage lien is not a guarantee, and it is not contingent. The lien gives a creditor a secured claim on the debtor's property immediately, while the guarantee gives a creditor a claim on the debtor when and only when the principal obligor defaults. The question of contingency turns on whether "all of the events giving rise to liability for the debt occurred prior to the debtor's filing for bankruptcy." *In re Mazzeo*, 131 F.3d at 303. Because a debtor's property becomes immediately "liable for the debt" upon the granting of the security interest, a mortgage lien is "noncontingent" under § 109(e).

No doubt, a similarity remains between the two instruments: In either situation, the creditor may not require payment in full absent default. But the same could be said for any loan. Neither the banker nor the merchant nor the mortgage lender may demand full repayment from a debtor on a whim; each creditor may demand only those funds immediately owed. And yet that reality does not convert every run-of-the-mine mortgage into a contingent debt. Otherwise, the outstanding balance on all thirty-year mortgages would represent "contingent" debts even though the debtor has kept pace on his payments and even though full payment generally may not be required under the mortgage instrument until a default. The courts long ago rejected such an interpretation. *See, e.g.*, *Sec. Mortgage Co. v. Powers*, 278 U.S. 149, 155–56 (1928) (distinguishing between attorney's fees that were a "liability still contingent at the time of bankruptcy" and the "principal debt, which is secured by a lien," "was not inchoate at the time" and "had already become perfect when the principal note and the loan deed securing it were given"); *Mertz v. Rott*, 955 F.2d 596, 598 (8th Cir. 1992) (characterizing a mortgage as a "fixed liability" rather than a "contingent liability"); *In re Vickers*, 577 F.2d 683, 686 (10th Cir. 1978) (distinguishing between "mortgages" and "contingent liabilities"); *United States v. Sheehy*, 541 F.2d 123, 125 (1st Cir. 1976) (same); *Mountain Trust Bank v. Shifflett*, 255 F.2d 718, 719 (4th Cir. 1958) (distinguishing between "mortgage debts" and "contingent liability"); *Kelly v. Minor*, 252 F. 115, 116 (4th Cir. 1918) ("An ordinary lien, such as a judgment, mortgage, or deed of trust, is for a definite amount, not dependent upon any contingency, and not affected by changes in the value of the property to which it attaches.").

The question in the end is not whether the creditor may extract full repayment from the debtor (or his property) immediately; the question is whether the creditor has a "right to payment" or a "right to an equitable remedy," *see* 11 U.S.C. § 101(5), from the debtor (or his property) at the time the debtor filed his petition. The creditors here possessed such a right—as proved by the difficulty Glance would have faced if he had tried to sell the two properties without first satisfying the banks' security interests. Because the sum of the debts on the Plymouth and Pinckney houses at the time Glance filed this Chapter 13 petition was $1,113,000—or about $190,000 more than the limit of $922,975 found in § 109(e)—the bankruptcy court correctly dismissed the petition.

III.

For these reasons, we affirm.