In re John V. BUCKLEY, III, Debtor.

**Michael Jeffries, Plaintiff,**

v.

**John V. Buckley, III, Defendant.**

**Bankruptcy No. 07–57335.**
**Adversary No. 07–2920.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division,
at Columbus.

April 24, 2009.

Brenda K. Bowers, Jesse Cook–Dubin, Columbus, OH, for Plaintiff.

Michael T. Gunner, Hilliard, OH, for Defendant.

### MEMORANDUM OPINION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

JOHN E. HOFFMAN, JR., Bankruptcy Judge.

### I.  Introduction

This adversary proceeding is before the Court on cross-motions for summary judgment filed by the plaintiff, Michael Jeffries ("Jeffries"), and the defendant, John V. Buckley, III ("Buckley" or "Debtor"). Jeffries seeks a judgment declaring as a matter of law that a debt owed to him by Buckley is nondischargeable under 11 U.S.C. § 523(a)(10) because (1) Buckley was denied a discharge in a prior California Chapter 7 bankruptcy case, and (2) the debt was or could have been listed or scheduled by Buckley in that case. In his cross-motion, Buckley asserts that § 523(a)(10) does not render the obligation in question nondischargeable because he

owed no debt to Jeffries until such time as an Ohio state court entered a judgment against him—which did not occur until after his discharge had been denied in the California case. Although he concedes that he listed Jeffries as a creditor in his California Chapter 7 case, Buckley maintains that the debt at issue did not come into existence until after the Ohio state court judgment was entered. Thus, Buckley argues, the debt could not have been listed or scheduled in his previous bankruptcy case and is not excepted from discharge by § 523(a)(10).

As explained below, Buckley's argument is wholly without merit. The position Buckley asserts—that, in applying § 523(a)(10)'s exception to discharge, the Court should delink the terms "debt" and "claim" in a manner no court has ever done before—is fatally flawed for several reasons. First, the express language of the Bankruptcy Code's definitional provisions and a well-settled body of case law authority interpreting them establish that the terms "claim" and "debt" do not have the distinct meanings that Buckley ascribes to them. Second, Buckley has failed to cite a single case supporting his assertion that, in order to trigger § 523(a)(10)'s discharge exception in this case, the debt that was or could have been listed or scheduled in the Debtor's first bankruptcy case must have been reduced to judgment. To the contrary, in the only decision located by the parties or the Court that arises from an even remotely analogous fact pattern—*Martin v. Martin (In re Martin)*, 2005 WL 3789128 (Bankr. S.D.N.Y. Nov.18, 2005), *aff'd*, 274 Fed. App'x 114 (2d Cir.2008) (unpublished)—the bankruptcy court rejected an argument

similar to that asserted by Buckley here. Finally, the construction of § 523(a)(10) Buckley urges the Court to adopt would not only produce absurd results, it also would undermine one of the central policies of the Code—to afford debtors the broadest relief possible in a bankruptcy proceeding. Thus, the Court concludes that Jeffries is entitled to summary judgment.

## II. Jurisdiction

The Court has jurisdiction to hear and determine this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(I).

## III. Procedural Background

On September 14, 2007, Buckley filed his voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Jeffries commenced this adversary proceeding by filing his Complaint Seeking Declaratory Judgment Determining the Nondischargeability of Debt That Was or Could Have Been Listed in a Previous Chapter 7 Case in Which Discharge Was Denied (Adv.Doc.1). Jeffries filed his motion for summary judgment (Adv.Doc.22) on September 4, 2008. While Jeffries's motion was pending, the Court entered an order permitting Buckley's original case attorney in this adversary proceeding to withdraw. The motion seeking leave to withdraw was filed several weeks before Jeffries filed his summary judgment motion. *See* Motion to Withdraw as Counsel ("Withdrawal Motion") (Adv. Doc.16).[1] Although Buckley did not respond to Jeffries's summary judgment

---

1. The Withdrawal Motion alleged that Buckley failed "to cooperate with ... counsel[,]" and "to pay the agreed upon fees...." Withdrawal Motion at 2. In the Withdrawal Motion, Buckley's former counsel also asserted that Buckley made "accusations against [him] that are not well founded[,]" and that "it would be a violation of his ethics to continue to represent this Debtor...." *Id.*

motion within the 20–day period prescribed by Local bankruptcy Rule 9013–1(b), the Court entered an order granting his new counsel's motion for leave to file an untimely response to the motion (Adv. Doc.26). However, rather than filing a response to Jeffries's summary judgment motion, Buckley filed a cross-motion for summary judgment ("Buckley Cross–Motion") (Adv.Doc.30). In response, Jeffries filed his Memorandum Contra Defendant's Cross–Motion for Summary Judgment and Reply in Support of Plaintiff's Motion for Summary Judgment (Adv. Doc.31).

## IV. Undisputed Facts

The factual recitations that follow are drawn from the filings described above, as well as from the documents submitted by the Debtor in his bankruptcy case. Although the parties have not filed stipulations, there is no dispute regarding the material facts set forth below.

Buckley is a professional interior designer. In 1998, Jeffries and Buckley entered into a consultation and service agreement. Under this agreement, Jeffries advanced sums to the Debtor for merchandise and furniture to be purchased for Jeffries.

In October 2001, Jeffries filed an action against Buckley in the Court of Common Pleas of Franklin County, Ohio, asserting claims for breach of contract, conversion and unjust enrichment ("State Court Case"). The complaint filed by Jeffries in the State Court Case alleged that Buckley had misappropriated hundreds of thousands of dollars that Jeffries had entrusted to Buckley for home decorating services and furnishings.

On September 13, 2002, Buckley filed a voluntary Chapter 7 case ("California Case") in the Bankruptcy Court for the Central District of California ("California Court"). On the Schedule F (Creditors Holding Unsecured Claims) that Buckley filed with his bankruptcy petition in the California Case he listed Jeffries as a creditor holding a claim in the amount of $6,000. Jeffries's claim was not listed as disputed. Under the column in Schedule F where Buckley was required to set forth the "Date Claim Was Incurred And Consideration For Claim," he provided the following information with respect to Jeffries's claim:

06/1998

Request for Default Judgment

Buckley also listed the law firm representing Jeffries in the State Court Case as a creditor in Schedule F, presumably for notice purposes only because the firm's claim was scheduled as $0.

On January 7, 2003, Jeffries filed an adversary proceeding in the California Court, seeking denial of Buckley's discharge and a determination that the debt arising from the claims asserted against the Debtor in the State Court Case was nondischargeable ("California Adversary Proceeding"). The complaint filed by Jeffries in the California Adversary Proceeding included claims for relief under §§ 523(a)(2)(A) and (a)(4) (nondischargeability of a debt based on fraud, and for fraud or defalcation by a fiduciary) and 727(a)(3) and (a)(5) (denial of discharge due to failure to maintain adequate financial records, and for failure to explain loss of assets). At a pre-trial conference conducted on September 17, 2003, the California Court bifurcated Jeffries's § 523 and § 727 claims for purposes of trial and set the § 727 claims for trial on October 8, 2003. On October 20, 2003, the California Court, following a full trial, entered judgment in Jeffries's favor on his § 727(a)(3) claim.[2] On October 19, 2004,

---

**2.** While denying Buckley a discharge based    on § 727(a)(3) (failure to maintain adequate

the Bankruptcy Appellate Panel of the Ninth Circuit entered a judgment affirming the California Court's denial of the Debtor's discharge under § 727(a)(3). Following the entry of the final order denying Buckley's discharge, Jeffries and Buckley stipulated to the dismissal, without prejudice, of the nondischargeability claims asserted in the California Adversary Proceeding because the claims were mooted by the denial of the Debtor's discharge.

After the California Court denied Buckley's discharge, Jeffries resumed his prosecution of the State Court Case.[3] On October 14, 2005, Jeffries was awarded a judgment in the amount of $503,680.99, plus costs and post-judgment interest in the State Court Case. In the schedules of assets and liabilities Buckley filed with this Court (Doc. 1) he listed the $503,680.99 debt to Jeffries arising from the judgment ("Debt").

## V. Legal Analysis

### A. Summary Judgment Standard

Under Fed.R.Civ.P. 56(c), made applicable in this adversary proceeding by Fed. R. Bankr.P. 7056, summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Novak v. MetroHealth Med. Ctr.,* 503 F.3d 572, 577 (6th Cir.2007). In reviewing a motion for summary judgment, the Court views the evidence, all facts, and any inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Novak,* 503 F.3d at 577; *Skowronek v. Am. S.S. Co.,* 505 F.3d 482, 484 (6th Cir.2007) (the court "must draw all reasonable inferences in favor of the nonmoving party").

" '[A]s to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.' " *Niecko v. Emro Mktg. Co.,* 973 F.2d 1296, 1304 (6th Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "Entry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' " *Novak,* 503 F.3d at 577 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Ransier v. Standard Fed. Bank (In re Collins),* 292 B.R. 842, 845 (Bankr.S.D.Ohio 2003).

The filing of cross-motions does not alter the standards governing the determination of summary judgment motions. *See Taft Broad. Co. v. United States,* 929 F.2d 240, 248 (6th Cir.1991); *Collins,* 292 B.R. at 845. But " 'cross motions for summary judgment do authorize the court to assume that there is no evidence which needs to be considered other than that which has been filed by the parties.' " *Schafer v. Rapp (In re Rapp),* 375 B.R. 421, 428 (Bankr. S.D.Ohio 2007) (quoting *Greer v. United States,* 207 F.3d 322, 326 (6th Cir.2000)).

financial records), the California Court ruled in Buckley's favor on the § 727(a)(5) claim (failure to explain satisfactorily any loss or deficiency in assets).

**3.** Denial of the Debtor's discharge terminated the automatic stay, which had halted the State Court Case. *See* 11 U.S.C. § 362(c)(2)(C).

**B. Exception to Discharge Based on Prior Denial of Discharge— § 523(a)(10)**

■ Jeffries's nondischargeability claim is based on § 523(a)(10) of the Bankruptcy Code, which provides in relevant part as follows:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—
>
> . . . .
>
> (10) that was or could have been listed or scheduled by the debtor in a prior case concerning the debtor under this title . . . in which the debtor waived discharge, or was denied a discharge under section 727(a)(2), (3), (4), (5), (6), or (7) of this title . . . .

11 U.S.C. § 523(a)(10). "[T]he effect of having a discharge denied is harsh: it renders all the debts/claims which could have been included in the petition forever nondischargeable in bankruptcy, thereby subjecting the debtor's assets and future income to all claims of such creditors." *United States Tr. v. Halishak (In re Halishak)*, 337 B.R. 620, 625 (Bankr.N.D.Ohio 2005). *See also Kovacs v. Basford (In re Basford)*, 363 B.R. 832, 833 (Bankr. N.D.Ohio 2006) ("The effect of § 523(a)(10) is that a debtor cannot discharge a debt in a future bankruptcy proceeding [where] their discharge was previously denied. . . ."); 4 *Collier on Bankruptcy* ¶ 523.16, (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2007) ("The discharge exception of section 523(a)(10) . . . serves to prevent debtors from circumventing the deterrent effect of a discharge denial under section 727.").

■ A straightforward application of § 523(a)(10) to the undisputed facts of this case leads to the inescapable conclusion that the Debt is nondischargeable. Simply put, the claim that gave rise to the Debt was scheduled in the California Case; Buckley's discharge was denied in that proceeding; and, hence, by operation of § 523(a)(10), the Debt is excepted from discharge in the Chapter 7 case pending before this Court. Attempting to avoid this inevitable result, Buckley advances an argument that dangerously borders on— and may actually cross the line into—the frivolous. He attempts to draw a distinction between the terms "claim" and "debt"—defined, respectively, in 11 U.S.C. § 101(5) and (12)—that simply does not exist. Buckley asserts that, while Jeffries held a claim against him at the time the Debtor filed the California Case, this claim was somehow distinct from the liability that gave rise to the Debt, which, he argues, did not come into existence until judgment was entered in Jeffries's favor in the State Court Case. Thus, according to Buckley, the claim held by Jeffries, which was listed by Buckley in the bankruptcy schedules he filed in the California Case, constitutes a different obligation—for purposes of applying § 523(a)(10)'s exception to discharge—than the Debt, which was liquidated by the judgment entered in the State Court Case. He argues:

> [O]n September 13, 2002, Defendant listed Plaintiff for "an unsecured non priority" *claim* in his previous California Bankruptcy. This "claim" was not at the time a "debt" in the previous bankruptcy because according to Plaintiff, the liability of Defendant was not established until October 14, 2005 when the Franklin County Judgment was reactivated and Plaintiff was awarded a judgment after the previous bankruptcy discharge was denied and the Adversarial Case between the parties was dismissed without prejudice.
>
> [Section] 523(a)(10) requires that the identical "debt" was or could have been listed in the previous bankruptcy. Because at the time that Defendant filed

the California Bankruptcy on September 13, 2002 the "debt" had not been established or matured (i.e. *liability* on a claim) Defendant did not and could not have listed the identical debt in his California bankruptcy.

Buckley Cross–Motion at 5. Buckley adds: "[I]t appears every 'debt' must include a 'claim[,]' however every 'claim' does not include a debt until liability is established. There is thus by definition a clear distinction between a 'claim' and a 'debt' and the two terms are not synonymous." *Id.* at 4. Accordingly, despite the fact that Buckley listed Jeffries as the holder of a claim in the California Case, he now asserts that the Debt is a separate and distinct obligation—one which did not arise until the Debtor's liability was established by the State Court judgment. For the reasons outlined below, Buckley cannot tenably maintain that the claim listed in the schedules he filed in the California Case is an entirely different obligation than the Debt.

To begin with, in asserting that a debt does not arise until a judgment is entered, Buckley turns a blind eye to the clear and unambiguous definitions of the terms "claim" and "debt" contained in the Code. "Debt" is defined in § 101(12) as "liability on a claim." 11 U.S.C. § 101(12).

"Claim," in turn, is defined in § 101(5), which states:

> The term "claim" means—
>
> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5). In arguing that the Debt did not come into existence until the State Court judgment was entered, Buckley simply ignores the express language of § 101(5), which makes clear that a "claim" means a "right to payment, *whether or not such right is reduced to judgment* ...." *Id.* (emphasis added).

▮ The plain language of the Code makes clear, then, that the existence of a claim turns on whether a creditor has a right to payment, not whether that right to payment has been reduced to judgment. And the Court must follow this plain statutory language.[4] *See Guastella v. Hamp-*

---

4. *See, e.g., Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) ("[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." (internal quotation marks omitted)); *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) ("[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is com-

plete." (citations and internal quotation marks omitted)). *See also Chase Manhattan Mortgage Corp. v. Shapiro (In re Lee),* 530 F.3d 458, 470 (6th Cir.2008) ("The common theme in the Supreme Court's bankruptcy jurisprudence over the past two decades is that courts must apply the plain meaning of the Code unless its literal application would produce a result demonstrably at odds with the intent of Congress." (citing additional cases)); *Brilliance Audio, Inc. v. Haights Cross Commc'ns, Inc.,* 474 F.3d 365, 371 (6th Cir.2007) ("As with any question of statutory interpretation, we must first look to the language of the statute itself. If the language of the statute is clear, then the inquiry is complete, and the

*ton (In re Guastella)*, 341 B.R. 908, 916 (9th Cir. BAP 2006) ("The [creditors] had a 'claim,' and that claim was a 'debt' within the meaning of the Bankruptcy Code, even though the State Court had not yet reduced the claim to final judgment when [the debtor] filed her petition."); *Hutchison v. Birmingham (In re Hutchison)*, 270 B.R. 429, 441 (Bankr.E.D.Mich.2001) ("In our view, however, the notion that the Plaintiff's debt to the Defendant would arise upon entry of a court order is incompatible with the Code.... [A] 'debt' is simply liability on a 'claim.' 11 U.S.C. § 101(12).... [A] 'claim' means nothing more than a 'right to payment, *whether or not such right is reduced to judgment[ or] liquidated.*' 11 U.S.C. § 101(5)(A) (emphasis added). In light of these criteria, it is obviously incorrect to define the debt owed [the creditor], as coming into being if and when she obtains a judgment."); *Herman v. Egea (In re Egea)*, 236 B.R. 734, 743 (Bankr.D.Kan.1999) ("[A] 'claim' by definition need not be reduced to judgment.").

Further, Buckley's attempt to differentiate the concepts of "claim" and "debt" finds absolutely no support in the caselaw. While he submits that "[t]here is ... by definition a clear distinction between a 'claim' and a 'debt' and the two terms are not synonymous[,]" Buckley Cross–Motion at 5, Buckley cites no cases in support of this proposition and ignores controlling authority from the Sixth Circuit that directly refutes this notion. *Glance v. Carroll (In re Glance)*, 487 F.3d 317, 321 (6th Cir. 2007) ("[The debtor] responds that we should not treat 'debts' and 'claims' the same in this setting.... An initial obstacle to this argument, as we have noted, is that Congress (and the Supreme Court) have already spoken on the matter: The National Legislature intended 'the meanings court should look no further." (citations omit-

of "debt" and "claim" [to] be coextensive.' " (quoting *Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 558, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990), *superseded by statute on other grounds by* Criminal Victims Protection Act of 1990, Pub.L. No. 101–581, § 3, 104 Stat. 2865)); *CPT Holdings, Inc. v. Indus. & Allied Employees Union Pension Plan, Local 73*, 162 F.3d 405, 407 (6th Cir.1998) ("The definitions of claim and debt are ... coextensive."). *See also In re Knight*, 55 F.3d 231, 234 (7th Cir.1995) ("[A] creditor has a claim against the debtor; the debtor owes a debt to the creditor." (internal quotation marks omitted)); *Barber v. K–B Bldg. Co. (In re Barber)*, 339 B.R. 587, 594 (Bankr. W.D.Pa.2006) ("The terms 'debt' and 'claim' are co-extensive. When a creditor has a claim against the debtor, the debtor correspondingly owes a debt to the creditor. They are but two windows on the same room." (citations and internal quotation marks omitted)); *Halishak*, 337 B.R. at 625 ("[T]he effect of having a discharge denied is harsh: [§ 523(a)(10) ] renders all the *debts/claims* which could have been included in the petition forever nondischargeable in bankruptcy ...." (emphasis added)); *Express Freight Lines, Inc. v. Kelly (In re Express Freight Lines, Inc.)*, 130 B.R. 288, 293 (Bankr.E.D.Wis.1991) ("[T]he definition of 'debt' is just as expansive as the definition of 'claim[ ]'....").

Thus, Buckley's argument that § 523(a)(10)'s exception to discharge is not triggered here because the Debt did not arise until entry of the State Court judgment—which, in turn, is based on his theory that the terms "debt" and "claim" are conceptually distinct, and that "debt" has a more narrow connotation than "claim"—is supported by neither the express terms of the Code nor caselaw authority. Not sur-

ted)).

prisingly, then, Buckley has failed to cite a single decision in which a court has circumscribed the reach of § 523(a)(10)'s discharge exception by adopting the very narrow interpretation of the term "debt" that he espouses here. Indeed, *Martin* is the only decision located by either the parties or the Court in which a bankruptcy court applying § 523(a)(10) has been presented with an argument similar to that made by Buckley here. And, as discussed below, the *Martin* court rejected the debtor's contention that an obligation arising prior to his first bankruptcy case—in which his discharge was denied—did not fall within the scope of § 523(a)(10)'s exception to discharge because it was not fully liquidated until some 12 years after the debtor's initial filing.

In *Martin*, the plaintiff, Virginia Martin ("Virginia"), brought an action in the Bankruptcy Court for the Southern District of New York ("Second Court") against her former husband, Thomas Martin ("Thomas"), seeking a judgment excepting a marital obligation from discharge. Her complaint requested a declaration that the claim she asserted in the 2005 Chapter 7 bankruptcy case filed by Thomas in the Second Court ("Second Case"), which had been reduced to judgment by a New York state court in 2004, was rendered nondischargeable by operation of § 523(a)(10). *Martin*, 2005 WL 3789128 at *1.

Virginia and Thomas divorced in 1990. The New York state court's judgment terminating their marriage ("Divorce Decree") incorporated a prenuptial agreement executed by the parties in 1986. *Id.* In 1992, Thomas filed a previous Chapter 7 case ("First Case") in the Bankruptcy Court for the Northern District of New York ("First Court"). The First Court entered a judgment denying Thomas a discharge, holding that the objecting creditor, Key Bank of New York, had established grounds for denial of his discharge under § 727(a)(2), (3), (4) and (5). *Id.* at *2.[5] By order dated November 13, 1996, Virginia obtained relief from stay in the First Case in order to pursue an action in state court to "recover sums due to Plaintiff under the prenuptial agreement and [the Divorce Decree]." *Id.* (internal quotation marks omitted). After the stay was lifted, litigation between Virginia and Thomas continued until November 2004, when the state court entered judgment against Thomas in the amount of $300,000, plus interest from December 21, 1990, plus costs and disbursements of $1,212 ("2004 Judgment"). After the 2004 Judgment was entered, Thomas filed a "motion to renew and/or reargue," which was denied by the New York Supreme Court. *Id.*

In the adversary proceeding filed by Virginia in the Second Case, the bankruptcy court granted Virginia's motion for summary judgment on her § 523(a)(10) claim. The court began its analysis by pointing out that § 523(a)(10) provides that " '[a] determination of nondischargeability in one bankruptcy case has a *res judicata* effect on the same debt in a subsequent case[,]' " and that "debts existing at the commencement of a case where discharge is denied 'can never be discharge[d].' " *Id.* at *3 (quoting *McIntosh v. Webb (In re Webb)*, 157 B.R. 614, 616 (Bankr.N.D.Ohio 1993)). Thomas maintained that Virginia was not entitled to judgment as matter of law on her § 523(a)(10) claim, because, among other reasons, (1) the proof of claim she filed in the First Case was "invalid," and (2) her

---

**5.** The bankruptcy court's judgment denying Thomas a discharge in the First Case was affirmed in a published decision, *Martin v.*

*Key Bank of New York, N.A. (In re Martin)*, 208 B.R. 799, 804–06 (N.D.N.Y.1997).

claim in that case was contingent and disputed. The court rejected this argument, holding that "summary judgment is appropriate under Section 523(a)(10) because the debt in question 'was or could have been listed or scheduled' by [Thomas] in the 1992 filing [i.e., the First Case], in which [Thomas] was denied a discharge...." *Id.* at *4 (quoting 11 U.S.C. § 523(a)(10)). The *Martin* court reasoned:

[I]t is not necessarily the amount of the proof of claim by the Debtor in the [First Case] that will be rendered nondischargeable under Section 523(a)(10). The words of the statute are that a debt "that was or could have been listed or scheduled by the debtor in a prior case" is non-dischargeable.... The basis of [Virginia's] objection to discharge under Section 523(a)(10) is the 2004 Judgment which is based upon the 1986 agreement and [Divorce Decree], both of which preceded the 1992 Filing and "[were] or could have been listed or scheduled by the debtor in a prior case."

... Put differently, the claim arising from the [Divorce Decree] and 1986 Agreement (whatever the amount) is non-dischargeable under Section 523(a)(10); although the amount may have been in dispute when the Plaintiff filed her proof of claim in the 1992 Filing, given the 2004 Judgment there is now no dispute as to the amount of the claim.

*Id.*

On appeal, the Second Circuit affirmed the bankruptcy court's order granting Virginia's motion for summary judgment on her § 523(a)(10) nondischargeability claim. *Martin v. Martin (In re Martin)*, 274 Fed.Appx. 114, 115 (2d Cir.2008) (unpublished). Like the bankruptcy court, the court of appeals was not persuaded by Thomas's argument that § 523(a)(10)'s discharge exception was inapplicable because

Virginia's claim was not reduced to judgment until approximately 12 years after the First Case was filed. The Second Circuit made it clear that the touchstone for determining § 523(a)(10)'s applicability is the existence of a debt that was or could have been listed or scheduled at the time of a debtor's first bankruptcy, not whether such debt had been reduced to judgment. The court stated:

[Thomas's] primary argument on appeal is that the debt found to be non-dischargeable in this case was "contingent" and therefore not within the meaning of § 523(a)(10). However, we have previously concluded that "Congress has adopted the broadest possible definition of 'debt'" to render it "sufficiently broad to cover any possible obligation to make payment, whether that obligation is liquidated or unliquidated, fixed or contingent, disputed or undisputed, and whether or not it is embodied in a judgment." *In re Mazzeo*, 131 F.3d 295, 302 (2d Cir.1997) (citations and internal quotation marks omitted). The debt at issue is therefore subject to the exception to discharge set forth at 11 U.S.C. § 523(a)(10).

*Id.* at 114. The bankruptcy and appeals courts in Martin thus refused to allow Thomas to do what Buckley attempts here—to avoid § 523(a)(10)'s res judicata effect by drawing an artificial distinction between the debts asserted in his first and second bankruptcy cases based on the fact that the nondischargeable claim had yet to be reduced to judgment as of the petition date in the California Case.

■ As the Second Circuit's decision in *Martin* makes clear, § 523(a)(10) renders nondischargeable in a second bankruptcy case any debt that was or could have been listed or scheduled in the debtor's first bankruptcy case, not—as Buckley suggests—only those debts that were reduced

to judgment prior to the first case. Thus, the Court must determine whether Buckley owed Jeffries a debt at the time he filed the California Case—that is, whether Buckley was "liab[le] [to Jeffries] on a claim." 11 U.S.C. § 101(12). Given the linkage between the terms "debt" and "claim" described above, this, in turn, requires the Court to ascertain whether a claim existed as of the petition date in the California case—that is, whether Jeffries had a right to payment at that time. *See* 11 U.S.C. § 101(5); *Riverwood Int'l Corp. v. Olin Corp. (In re Manville Forest Prods. Corp.)*, 225 B.R. 862, 866 (Bankr. S.D.N.Y.1998) ("Although the definition of claim is broad, the existence of a valid bankruptcy claim depends on (1) whether the claimant possessed a right to payment and, (2) whether that right arose before the filing of the petition."), *aff'd*, 209 F.3d 125 (2d Cir.2000).

The phrase "right to payment" is not defined in the Code. The Supreme Court has held that "[t]he plain meaning of a 'right to payment' is nothing more nor less than an enforceable obligation, regardless of the objectives the State seeks to serve in imposing the obligation." *Davenport*, 495 U.S. at 559, 110 S.Ct. 2126. *See also In re Nat'l Gypsum Co.*, 139 B.R. 397, 405 (N.D.Tex.1992) ("A claim exists only if before filing of the bankruptcy petition, the relationship between the debtor and the creditor contained all the elements necessary to give rise to a legal obligation—'a right to payment'—under the relevant non-bankruptcy law."). In determining whether a prepetition right to payment, and hence a claim, exists, courts have formulated three distinct tests: (1) the accrued-state-law-claim approach; (2) the conduct approach; and (3) prepetition-relationship/fair-contemplation approach. *Epstein v. Official Comm. of Unsecured Creditors of Piper Aircraft Corp. (In re Piper Aircraft Corp.)*, 58 F.3d 1573, 1576

(11th Cir.1995); *In re Cleveland*, 349 B.R. 522, 529 (Bankr.E.D.Tenn.2006). In describing the alternative tests below, the Court quotes extensively from the *Cleveland* court's excellent explanation of the three different approaches.

The first test for ascertaining the existence of a prepetition claim—the accrued-state-law-claim test—focuses on

the notion that "while federal law controls which claims are cognizable under the Code, the threshold question of when a right to payment arises, absent overriding federal law, 'is to be determined by reference to state law.'" *Avellino v. M. Frenville Co., Inc. (In re M. Frenville Co., Inc.)*, 744 F.2d 332, 337 (3d Cir.1984) (quoting *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 67 S.Ct. 237, 239, 91 L.Ed. 162 (1946)). Also known as the "right to payment" approach, courts following it have held that "a 'claim' does not arise in bankruptcy until a cause of action has accrued under non-bankruptcy law." *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1275 (5th Cir.1994) (citing *M. Frenville Co.*, 744 F.2d at 337). This approach has been rejected "as inconsistent with the broad statutory definition of a 'claim' and with 'the overriding goal of the Bankruptcy Code to provide a "fresh start" for the debtor.'" *Cal. Dep't of Health Servs. v. Jensen (In re Jensen)*, 995 F.2d 925, 928 (9th Cir.1993) (quoting *Jensen v. Cal. Dep't of Health Servs. (In re Jensen)*, 127 B.R. 27, 31 (9th Cir.BAP1991) (citations omitted)); *[Roach v.] Edge [In re Edge) ]*, 60 B.R. [690,] [ ] 696 [ (Bankr.M.D.Tenn.1986) ] ("The plain meaning of §§ [101(5) ] and 502(b)(1) is that state law will not control the existence or allowance of a bankruptcy claim where under state law the right to payment depends only on one or more of the enumerated disabling

characteristics [that the right is contingent, unmatured, etc.].").

*Cleveland,* 349 B.R. at 529.

The conduct approach determines whether a claim arises prepetition by analyzing

> when the underlying acts or conduct forming the basis of the right to payment occurred. *See Grady v. A.H. Robins Co., Inc.,* 839 F.2d 198, 203 (4th Cir.1988) ("We do not believe that there must be a right to the immediate payment of money ... when the acts constituting the tort or breach of warranty have occurred prior to the filing of the petition, to constitute a claim[.]"). Accordingly, as long as "[the] debtor's conduct forming the basis of liability occurred pre-petition, a 'claim' arises under the Code when that conduct occurs, even though the injury resulting from this conduct is not manifest at the commencement of the bankruptcy proceedings." *Lemelle,* 18 F.3d at 1275; *see also Edge,* 60 B.R. at 705 (holding that "a right to payment and thus a claim [arises] at the time of the debtors' prepetition misconduct."). This approach has been criticized as being too liberal and "patently unfair to creditors because it would allow a [debtor] ... [to] receive a discharge from any liabilities before the ... creditor [ ] ever has a reason to know about the debtor's involvement[.]" *Signature Combs, Inc. v. United States,* 253 F.Supp.2d 1028, 1035 (W.D.Tenn.2003).

*Id.*

Courts applying the final test—the prepetition-relationship/fair-contemplation approach—analyze the issue of whether a claim exists on the date a debtor files a bankruptcy petition by asking

> "whether there was a pre-petition relationship between the debtor and the creditor such that a possible claim is within the fair contemplation of the creditor at the time the petition is filed." *[In re] Parks,* 281 B.R. [899,] [ ] 902 [ (Bankr.E.D.Mich.2002) ]. Courts employing the relationship approach "have not viewed the timing of a debtor's negligent conduct as dispositive of when a 'claim' arises under the Code. Instead, they have determined that a claim arises at the time of the debtor's negligent conduct forming the basis for liability only if the claimant had some type of specific relationship with the debtor at that time." *Lemelle,* 18 F.3d at 1276. This test "requires 'some pre-petition relationship, such as contact, exposure, impact, or privity, between the debtor's pre-petition conduct and the claimant' in order for the claimant to hold a § 101(5) claim." *Piper Aircraft Corp.,* 58 F.3d at 1577 (citations omitted) (noting that "the courts applying the conduct test also presume some pre-petition relationship between the debtor's conduct and the claimant."). Accordingly, "where the parties could have fairly contemplated a claim prior to bankruptcy, the claim will be held to have arisen pre-petition, even when the actual right to payment matures post-petition." *In re Emelity,* 251 B.R. 151, 156 (Bankr.S.D.Cal.2000).

*Id.* at 529–30.

The *Cleveland* court noted that the Sixth Circuit has yet to adopt any of the foregoing "methods for determining when a claim arises for the purpose of § 101(5)[,]" *id.* at 530, pointing out, however, that "other courts within the Circuit have adopted either the [prepetition-]relationship/fair contemplation approach or the conduct approach." *Id.* (citing *Signature Combs,* 253 F.Supp.2d at 1038 (utilizing prepetition-relationship/fair-contemplation approach to determine whether environmental claim arose prepetition); *Parks,* 281 B.R. at 902–03 (applying prepetition-relationship/fair-contemplation approach to determine sta-

tus of fraud and indemnification) and *Edge*, 60 B.R. at 705 (analyzing status of claim for negligent dental treatment by applying conduct approach)). In analyzing whether the claim in question in the *Cleveland* case arose before or after the date the debtor filed his Chapter 13 case, the court ultimately adopted and applied the prepetition-relationship/fair-contemplation test.[6]

Here, it is not necessary for the Court to choose between the alternative, judicially-formulated tests that have been applied to determine whether a claim arises before or after a debtor's bankruptcy filing. Even under the most restrictive of the three tests—the accrued-state-law-claim standard—it is clear that the Debt arose prior to the date Buckley filed the California Case. The claims asserted by Jeffries against Buckley in the State Court Case— breach of contract, conversion and unjust enrichment—all flow from Buckley's misappropriation of funds that Jeffries entrusted to him in order to obtain home decorating services and furnishings. And under Ohio law, these claims arose when Buckley misappropriated the funds Jeffries entrusted to him and Jeffries sustained damages as a result of this misconduct—which indisputably occurred prior to the date Buckley filed the California Case. *See Children's Hosp. v. Ohio Dep't of Pub. Welfare*, 69 Ohio St.2d 523, 433 N.E.2d 187, 190 (1982) ("Ordinarily, a cause of action does not accrue until actual damage occurs.... [The] cause of action for recovery of amounts wrongfully withheld, therefore, did not accrue until the money was actually withheld ...." (citation omitted)); *W. Ohio Colt Racing Ass'n v. Fast*, 2009 WL 737776 at *5 (Ohio Ct.App. Mar.23, 2009) ("[A]n action for conversion of an instrument shall be brought within three years after the cause of action accrues.

---

6. The *Cleveland* court concluded that

> [a] claim is a pre-petition claim within the scope of § 101(5)(A) if there was a relationship, existing pre-petition, between the debtor and the creditor such that the creditor could fairly contemplate the possibility of a claim against the debtor's bankruptcy estate at the time that the bankruptcy petition was filed. Otherwise, the claim is post-petition.

349 B.R. at 531. In reaching this conclusion, the court relied heavily on "the [following] well-reasoned ... analysis," *id.*, contained in *Corman v. Morgan (In re Morgan)*, 197 B.R. 892 (N.D.Cal.1996):

> [The] "fairly contemplated" test is the most appropriate of the above tests for determining when [the creditor's] claim arose.... [A] creditor pursuing a fraud claim against a bankrupt presents a court with conflicting objectives.
>
> On the one hand is the objective of giving the debtor a fresh start. Providing debtors this fresh start is the overriding goal of the Code. The objective of giving debtors a fresh start therefore supports adopting a very broad definition [of] "claim" in this case, perhaps even to the extent of adopting the "debtor's conduct" approach....

> On the other hand is the objective of not allowing debtors to use the Code as a shield for fraudulent conduct. One way in which this objective manifests itself is the judicial doctrine which limits discharge to innocent debtors. Another way this objective manifests itself is Code §§ 523(a)(2) and (4), which except debts for fraud from discharge.
>
> Adoption of the "fairly contemplated" test is the best way to balance the Code's fresh start policy, on the one hand, and its measured hostility to fraud, on the other. On the one hand, adoption of this test will serve the goal of giving debtors a fresh start by forcing all creditors who know or should know before confirmation of their fraud claims against the debtor to bring those claims in the bankruptcy case, thus allowing those claims to be resolved under the Code's special provisions for fraud and discharge. On the other hand, adoption of this test will prevent bankruptcy from being used as a shield for fraud by allowing fraud claims to go forward against debtors who concealed their fraud prior to discharge. *Morgan*, 197 B.R. at 898 (citations and footnote omitted). *See also Parks*, 281 B.R. at 903 (quoting and relying on *Morgan* ).

Generally, a cause of action accrues when the wrongful act is committed."); *Karlen v. Steele,* 2000 WL 1335785 at *5 (Ohio App. Sept. 15, 2000) ("A cause of action for breach of contract does not accrue until the party suffers actual damages as a result of the alleged breach."); *Palm Beach Co. v. Dun & Bradstreet, Inc.,* 106 Ohio App.3d 167, 665 N.E.2d 718, 723 (Ohio App.1995) ("[T]he traditional rule in Ohio appears to be that a cause of action for unjust enrichment accrues on the date that money is retained under circumstances where it would be unjust to do so.").

In sum, application of the accrued-state-law-claim test—the most restrictive of the three tests for determining the existence of a prepetition claim—leads to the inevitable conclusion that, at the time the California Case was filed, Jeffries had a right of payment from Buckley arising from Buckley's wrongful conduct. Jeffries had filed the State Court Case asserting that right. The Debt accordingly "was or could have been listed or scheduled"—and indeed was scheduled by Buckley—in the California Case. Because Buckley's discharge was denied in the California Case, § 523(a)(10) renders the Debt nondischargeable in the Chapter 7 case pending before this Court.

In closing, the Court notes that the position advanced by Buckley—in addition to suffering from the legal and logical infirmities discussed above—is based on a narrow interpretation of the Bankruptcy Code's definitional provisions, which, if adopted, would thwart a central policy of the Code and violate a fundamental tenet of statutory construction. As discussed, Buckley's attempt to escape the reach of § 523(a)(10)'s discharge exception is based on an unduly restrictive interpretation of the terms "claim" and "debt." Narrowly

defining these terms as Buckley advocates would frustrate the Code's fresh-start policy [7] and violate a cardinal rule of statutory construction—specifically, the rule requiring courts to avoid interpretations that produce absurd results.

■ "Congress intended to adopt the broadest possible definition of the term 'claim,' so that a bankruptcy case would deal with all of the debtor's legal obligations." *Stewart Foods, Inc. v. Broecker (In re Stewart Foods, Inc.),* 64 F.3d 141, 144 (4th Cir.1995). *See also Glance,* 487 F.3d at 320 ("By defining 'debt' in terms of 'claim,' Congress has made 'the meanings of "debt" and "claim" . . . coextensive.' . . . And by defining 'claim' broadly, Congress has 'adopt[ed] the "broadest possible" definition of a "debt," 'the broadest possible definition in other words of any 'right to payment . . . .' '" (quoting *Davenport,* 495 U.S. at 558, 564, 110 S.Ct. 2126) (other citations omitted)); *Lugo v. Paulsen,* 886 F.2d 602, 605 (3d Cir.1989) ("Courts have recognized Congress' intent to permit broad relief in bankruptcy and have followed its directive to interpret 'claim' liberally."). The House and Senate Reports for the Bankruptcy Reform Act of 1978 state Congress's rationale for adopting very broad definitions of the terms "claim" and "debt":

> By this broadest possible definition, and by the use of the term throughout the title 11 . . . the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court.

H.R.Rep. No. 95–595, at 309 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6266; S.Rep. No. 95–989, at 22 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5808.

---

7. The "principal purpose of the Bankruptcy Code is to grant a fresh start to the honest but unfortunate debtor." *Marrama v. Citizens*

*Bank of Mass.,* 549 U.S. 365, 367, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007) (internal quotation marks omitted).

■ Thus, the broad definitions of the terms "claim" and "debt" contained in the Code are "central to the policy of a 'fresh start' for a debtor and permit[ ] a debtor to receive the broadest possible relief in the bankruptcy court...." *PBGC v. LTV Corp. (In re Chateaugay Corp.),* 87 B.R. 779, 795 (S.D.N.Y.1988) (internal quotation marks omitted), *aff'd on other grounds,* 875 F.2d 1008 (2d Cir.1989), *rev'd on other grounds,* 496 U.S. 633, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990). Adopting the narrow construction of the terms "claim" and "debt" advocated by Buckley would limit the relief available to debtors and defeat or severely impair the Code's fresh-start policy. Buckley's situation illustrates the point. If the Court accepted his narrow interpretation of the term "debt"—and thus his argument that the Debt should be deemed to be an obligation distinct from that which he listed in his schedules in the California Case—he would be unable to obtain effective bankruptcy relief in a single proceeding. Although the Debt arose from Buckley's misappropriation of funds, which occurred well before the California Case was filed, he would not have been able to discharge this obligation in the California Case because, by his reckoning, it did not come into existence until after he filed his petition in that case—i.e., when the judgment was entered in the State Court Case. Put differently, even if Buckley had not committed the misconduct that warranted a denial of discharge (or, alternatively, a finding of nondischargeability) by the California Court, under his restrictive reading of the Code's definitional provisions, he would not have been able to obtain relief with respect to the Debt be-cause it would constitute a postpetition obligation that is separate and distinct from the debt to Jeffries that he scheduled in the California Case.[8] Under this tortured reading of the Code's definitional provisions, only those debtors with noncontingent, fully liquidated debts would be able to obtain complete relief in a single bankruptcy proceeding. This is precisely the type of absurd result that courts strive to avoid in the construction of statutes. *See Dewsnup v. Timm,* 502 U.S. 410, 427, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) (Scalia, J., dissenting) ("If possible, [courts] should avoid construing the statute in a way that produces ... absurd results."); *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 575, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."); *Tennessee Prot. & Advocacy, Inc. v. Wells,* 371 F.3d 342, 352 (6th Cir. 2004) (Daughtrey, J., dissenting) ("In construing statutes, we are frequently admonished to avoid constructions that will produce absurd results.").

## VI. Conclusion

For the foregoing reasons, the Plaintiff's Motion is **GRANTED,** and the Defendant's Cross–Motion is **DENIED.** The Debt is excepted from discharge by 11 U.S.C. § 523(a)(10). The Court will enter a separate judgment in accordance with this memorandum opinion.

**IT IS SO ORDERED.**

8. Under the Code, a debtor may not receive a discharge of his debts if he received a Chapter 7 discharge "within 8 years before the date of the filing of the petition." 11 U.S.C. § 727(a)(8). Under the version of § 727(a)(8) in effect at the time the California Case was filed, a debtor was eligible for discharge only if he had not received a discharge within six years of the petition date.