**In re Keithette Marlene GRAFT, Debtor.**

**Daniel M. McDermott, Plaintiff**

**v.**

**Keithette Marlene Graft, Defendant.**

**Bankruptcy No. 12–51795.**
**Adversary No. 12–2130.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division,
at Columbus.

March 20, 2013.

Daniel Craine, Pamela Arndt, Office of the U.S. Trustee, Columbus, OH, for Plaintiff.

Robert R. Goldstein, Columbus, OH, for Defendant.

### MEMORANDUM OPINION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

JOHN E. HOFFMAN, JR., Bankruptcy Judge.

#### I. Introduction

In this adversary proceeding, the United States Trustee ("UST") seeks a determina-

tion that certain debts of Keithette Marlene Graft ("Debtor") are nondischargeable under 11 U.S.C. § 523(a)(10). Both parties have filed motions for summary judgment. For the reasons explained below, the Court concludes that the Debtor is entitled to a judgment as a matter of law that § 523(a)(10) does not render the debts in question nondischargeable.

## II. Jurisdiction

The Court has jurisdiction to hear and determine this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(I).

## III. Background

On March 2, 2012, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, thereby commencing her pending bankruptcy case ("Pending Case"). Previously, she had been a debtor in another Chapter 7 case, Case No. 09–60505 ("Prior Case"), which she commenced in September 2009. The Debtor filed a schedule in the Prior Case listing certain unsecured nonpriority claims that she later included on a schedule submitted with her petition in the Pending Case ("Common Debts").[1]

On June 1, 2010, the Court entered an order in the Prior Case granting the Debtor a discharge under § 727 of the Bankruptcy Code. *See* Prior Case, Doc. 51. Thereafter, Frederick M. Luper, the Chapter 7 trustee appointed in the Prior Case ("Trustee"), filed a motion to compromise disputes he had with the Debtor relating to her 2009 state and federal income tax refunds, which she received and spent during the pendency of the Prior Case, and certain funds she had on deposit as of the date she commenced the Prior Case. *See* Prior Case, Doc. 53 at 2. As part of the settlement, the Debtor agreed that she had an obligation to pay $2,850.17 ("Obligation") to the Trustee on behalf of her bankruptcy estate. *See id.*

On August 13, 2010, the Court entered an agreed order in the Prior Case ("Agreed Order") (Prior Case, Doc. 56) effectuating the settlement between the Debtor and the Trustee. The Agreed Order required the Debtor, among other things, to "turn over her 2010 federal and state income tax ... refunds to pay off or toward [the] Obligation...." Agreed Order at 2. The Agreed Order also provided as follows:

> [I]f the Debtor makes all of the payments as agreed, the Trustee shall not seek the revocation of her bankruptcy discharge. In the event that the Debtor defaults under the terms of this [Agreed Order], the Trustee shall serve a written notice of default upon Debtor at the address on file with the Bankruptcy Court. If the Debtor fails to cure the default in full, within ten (10) days after the date of the notice, the Trustee shall submit an affidavit of default. Upon the filing of this affidavit of default, the Court will enter an order revoking the Debtor's discharge.

Agreed Order at 3.

On June 6, 2011, the Trustee filed an Affidavit of Default stating that the Debtor "received her 2010 federal income tax re-

---

**1.** The schedule on which the Debtor listed the Common Debts, Schedule F, directs debtors to include unsecured nonpriority "claims," while § 523(a) excepts certain "debts" from discharge. The terms "claim" and "debt" are equivalent. *See Jeffries v. Buckley (In re Buckley),* 404 B.R. 877, 884 (Bankr.S.D.Ohio 2009)

(citing *Glance v. Carroll (In re Glance),* 487 F.3d 317, 321 (6th Cir.2007)). The Common Debts are identified on Exhibit A to the Trustee's Verified Complaint (Doc. 1) and comprise $9,764 of the approximately $60,000 of unsecured nonpriority claims scheduled by the Debtor in the Pending Case.

fund in the amount of $2,179.86 on February 25, 2011 and has not turned it over to the Trustee," that the "Trustee sent a Notice of Default to the Debtor via certified mail on May 6, 2011," that the "Debtor has not cured the default" and that the Debtor "has defaulted under the terms of the Agreed Order." Prior Case, Doc. 62, Ex. 1 at 1–2. On June 6, 2011, the Court entered an order ("Revocation Order") (Prior Case, Doc. 63) revoking the Debtor's discharge. The Revocation Order, which was prepared and submitted by the Trustee, stated that "[u]pon consideration of the matters set forth in the Affidavit of Default and in the Court's file, the Court finds that Debtor has defaulted under the terms of an agreed order and that the revocation of Debtor's discharge is appropriate." Revocation Order at 1. The Prior Case was closed on November 18, 2011.

## IV. Legal Analysis

### A. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable in this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Ricci v. DeStefano*, 557 U.S. 557, 586, 129 S.Ct. 2658, 174 L.Ed.2d 490 (2009) (internal quotation marks omitted). A dispute is genuine only if it is "based on evidence upon which a reasonable [finder of fact] could return a [judgment] in favor of the non-moving party." *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 270 (6th Cir. 2009). And a "factual dispute concerns a 'material' fact only if its resolution might

affect the outcome of the suit under the governing substantive law." *Id.* Here, there is no genuine dispute as to any material fact, and the issue of whether § 523(a)(10) excepts the Common Debts from discharge is properly determined as a matter of law on summary judgment.

### B. Dischargeability of the Common Debts

■ The UST requests a judgment that the Common Debts are nondischargeable under § 523(a)(10) of the Bankruptcy Code, which provides in relevant part as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

. . . .

(10) that was or could have been listed or scheduled by the debtor in a prior case concerning the debtor under this title ... in which the debtor waived discharge, or was denied a discharge under section 727(a)(2), (3), (4), (5), (6), or (7) of this title[.]

11 U.S.C. § 523(a)(10). Thus, a Chapter 7 discharge does not discharge an individual debtor from debts that were or could have been scheduled in a prior case if the debtor was denied a discharge in the prior case under one of the subsections of § 727 enumerated in § 523(a)(10), including § 727(a)(6). A Chapter 7 discharge will be denied under § 727(a)(6)(A) if "the debtor has refused, in the case ... to obey any lawful order of the court, other than an order to respond to a material question or to testify...." 11 U.S.C. § 727(a)(6)(A).

Although § 523(a)(10) does not use the term "revoked," courts have held that it nevertheless excepts from the Chapter 7 discharge in a pending case any debt scheduled in a prior bankruptcy case if the debtor's discharge in the prior case was

revoked based on misconduct that would have resulted in the denial of the debtor's discharge under § 727(a)(2)–(7). *See Klapp v. Landsman (In re Klapp)*, 706 F.2d 998, 1000 (9th Cir.1983) ("[T]o give full effect to the Congressional policy of encouraging honesty and cooperation by the debtor in a bankruptcy proceeding, we must read section 523(a)(9) [now numbered § 523(a)(10)] to make a debt non-dischargeable where the discharge of the same debt was revoked on the basis of section 727 debtor misconduct in a prior bankruptcy proceeding."); *Marion Indep. Fed. Credit Union v. Baker (In re Baker)*, 1990 WL 305559, at *4 (Bankr.N.D.Ind. Apr. 20, 1990) (same); *Patterson Dental Co. v. Mendoza (In re Mendoza)*, 16 B.R. 990, 995–96 (Bankr.S.D.Cal.1982) ("If the cause of the failure to receive the discharge is one of those detailed in Section 523(a) [10], then debts scheduled in the case cannot be discharged in a subsequent bankruptcy case.... The result is the same whether the dishonesty or recalcitrance occurred before, or after, the entry of the discharge order.").[2]

The approach taken by the *Klapp, Baker* and *Mendoza* courts can be squared with the plain language of § 727(a)(6) even though the statute uses the term "denied" but not "revoked." The Bankruptcy Code does not define the term "denied." But

case law interpreting § 727(a)(8) provides guidance on the meaning that should be given to the term "denied" in the discharge context. Under that section, "[t]he court shall grant the debtor a discharge, unless—the debtor has been granted a discharge ... in a case commenced within 8 years before the date of the filing of the petition[.]". 11 U.S.C. § 727(a)(8). On June 1, 2010, the Debtor was *granted* a discharge in the Prior Case, which was commenced within eight years before she filed her petition in the Pending Case. Would § 727(a)(8), therefore, prohibit her from receiving a discharge in the Pending Case even though her discharge in the Prior Case, though once granted, was subsequently revoked? The Court is not aware of any authority requiring such a result, and in fact there is case law to the contrary. *See Mendoza*, 16 B.R. at 994 ("Here, the debtor did receive a discharge in his first case, but it was nullified upon the entry of the revocation order, with the obvious result that he did not receive a final grant of a discharge. Thus, the bar of Section 727(a)(8) cannot keep a debtor from receiving a discharge in a subsequent case, even if filed within six years from the filing of the first, where that debtor has not received the benefits of a final discharge in that first case." (citation omitted)).[3] Indeed, in her motion for summary

---

**2.** *See also In re Ventura*, 375 B.R. 103, 110 (Bankr.E.D.N.Y.2007) (stating in dictum that "[i]f a court revokes a debtor's discharge under Section 727(d) ... then the debts scheduled by that debtor will not be eligible for discharge in a future bankruptcy case."); *In re Bowles*, 48 B.R. 502, 508 n. 9 (Bankr. E.D.Va.1985) ("Mr. Bowles seeks to discharge debts in these Chapter 13 proceedings which in Chapter 7 would [due to the revocation of the debtor's discharge in a prior case] presently be subject to dischargeability objections pursuant to § 523(a)(10).... As a result, these debts can never be discharged in a subsequent Chapter 7 case.") (citing *Klapp* and *Mendoza*). The result was the same un-

der case law interpreting a provision of the former Bankruptcy Act analogous to § 523(a)(10). *See Francis v. Hairston (In re Hairston)*, 3 B.R. 436, 438–39 (Bankr.D.N.M. 1980).

**3.** Under the current version of § 727(a)(8), a debtor may not receive a discharge if he or she received a Chapter 7 discharge "within 8 years before the date of the filing of the petition." 11 U.S.C. § 727(a)(8). Under the version of § 727(a)(8) in effect at the time *Mendoza* was decided, a debtor was ineligible for discharge if the debtor had received a Chapter 7 discharge within six years of the petition date.

judgment ("Debtor's Motion") (Doc. 14), the Debtor herself takes the position that the Prior Case "was dismissed without a Discharge having been granted." Debtor's Mot. at 4. "The failure to obtain a discharge by the entry of a revocation order nullifies the discharge. If the debtor then does not thereafter gain his discharge, then the result is that the discharge is denied." *Mendoza*, 16 B.R. at 995.

In both the Debtor's Motion and her reply in support of summary judgment ("Debtor's Reply") (Doc. 18), the Debtor relies on *DuBois v. Faber (In re Faber)*, 330 B.R. 235 (Bankr.N.D.Ind.2005) to support her argument that § 523(a)(10) does not apply if a discharge in a prior case was nullified via revocation rather than initially denied. *See* Debtor's Mot. at 5–6; Debtor's Reply at 2. In *Faber*, nearly three years after the debtor received his discharge and eight months after the bankruptcy court entered a turnover order with which the debtor ultimately failed to comply, the Chapter 7 trustee of the debtor's estate commenced an adversary proceeding seeking to revoke the debtor's discharge under § 727(d)(3) for failure to comply with the turnover order. Section 727(d)(3) of the Bankruptcy Code provides that "[o]n request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—the debtor committed an act specified in subsection (a)(6) of this section[.]" 11 U.S.C. § 727(d)(3).

The debtor in *Faber* did not answer the complaint commencing the adversary proceeding, so the issue of whether the debt-or's discharge should be revoked was before the court on the trustee's motion for default judgment. The bankruptcy court found that the case presented "troubling circumstances," including "the essential fairness of dealing with circumstances in which a debtor does not comply with [his] responsibilities but is not called to task for not doing so until long after he/she can legitimately deem his/her journey through the bankruptcy system to have been completed." *Faber*, 330 B.R. at 238. Thus, it was "with some reluctance" that the court granted the Chapter 7 trustee's motion for a default judgment. *Id.* at 240. Under those relatively unusual circumstances, the court included in its order revoking the debtor's discharge the proviso that the revocation "does not constitute denial of discharge under 11 U.S.C. § 727(a), and thus that the bar of nondischargeability provided by 11 U.S.C. § 523(a)(10) does not apply to debts which were scheduled or could have been scheduled" in the debtor's case. *Id.* The bankruptcy court likely included this provision because it was aware of decisions such as *Klapp, Baker* and *Mendoza.*

█ Although those cases are persuasive, the Court need not decide here whether § 523(a)(10) applies whenever a debtor's discharge in a prior case was revoked based on misconduct that would have resulted in the discharge being denied in the first place. There is no need to reach that issue here because the Debtor's discharge in the Prior Case was not revoked based on misconduct that would have resulted in the denial of her discharge under § 727(a)(6).[4]

---

4. *Cf. In re Hickman*, 448 B.R. 769 (Bankr. C.D.Ill.2011). In *Hickman*, the bankruptcy court, after discussing *Klapp, Mendoza* and *Faber*, stated that "[c]ase law is divided as to whether, under the limited circumstances where the grounds for the revocation of a discharge also constitute grounds for the denial of a discharge, the revocation may be considered as the equivalent of a denial for purposes of the future applicability of § 523(a)(10)." *Id.* at 773. The bankruptcy court declined to decide the question of the

■ True, the Debtor admittedly *failed* to comply with the Agreed Order. *See* Answer (Doc. 4) ¶ 9 (admitting the UST's allegation that the Debtor failed to comply with the requirement of turning over the 2010 tax refund to the Trustee). However, her discharge could have been withheld under § 727(a)(6)(A) only if there had been a finding that she had *refused* to obey the Agreed Order. *See Noland v. Johnson (In re Johnson)*, 387 B.R. 728, 750 (Bankr. S.D.Ohio 2008) ("Because noncompliance is not the equivalent of a 'refusal' to comply, courts have concluded that the mere failure or inability to comply with a court order, by itself, does not warrant a denial or revocation of discharge."). In order to clarify the distinction between failure and refusal, it is worth noting that one of the issues relevant to a finding of refusal to comply with a court order is whether the debtor's noncompliance "was defensible on the basis of impossibility or an inability to comply." *Hunter v. Magack (In re Magack)*, 247 B.R. 406, 411 (Bankr.N.D.Ohio 1999). If a debtor's failure to obey a court order is defensible on the basis of impossibility or an inability to comply, then the debtor has not refused to obey the order.[5]

The Agreed Order did not require a finding of refusal to comply with its requirements as a predicate for revoking the Debtor's discharge, and the Revocation Order itself did not include a finding that the Debtor refused to comply with the Agreed Order. Relying on *Markovich v. Samson (In re Markovich)*, 207 B.R. 909, 913 (9th Cir. BAP 1997), the UST argues in his motion for summary judgment ("UST's Motion") (Doc. 12) that such a finding must have been implicit in the Agreed Order, or otherwise the Court would have had no authority to revoke the Debtor's discharge. *See* UST Mot. at 4–5. In *Markovich*, after the debtor received a discharge, a creditor obtained a judgment that his claim against the Chapter 7 debtor was nondischargeable. The debtor then requested that the bankruptcy court vacate his discharge under § 727(d) and convert his case to Chapter 13. Because § 727(d) begins with the prefatory language "[o]n request of the trustee, a creditor, or the United States trustee," 11 U.S.C. § 727(d), the bankruptcy court held that the debtor lacked standing to seek to vacate his discharge under § 727(d), and the bankruptcy appellate panel affirmed. *See Markovich*, 207 B.R. at 911–12. The bankruptcy appellate panel also affirmed the bankruptcy court's ruling that it lacked "inherent equitable power" to grant the debtor's request over the objection of the creditor. *See id.* at 913.

By contrast, the Court revoked the Debtor's discharge in the Prior Case in an exercise of its authority to enforce an order by which she had agreed that her discharge would be revoked for failing to

---

applicability of § 523(a)(10) because the debtor's discharge in that case was revoked for a reason (lack of cooperation with an audit conducted by the UST) that is not included in § 727(a)(2)–(7) and because the court had never ordered the debtor to comply with the audit, so that § 727(a)(6) was inapplicable. *See id.* at 774. The court stated that its ruling was not meant to hold "that the failure of a debtor to cooperate with a statutorily-mandated audit can never result in a discharge[,] denial or revocation which impacts a debtor's future ability to discharge debts." *Id.* at 775. "Had the UST sought and obtained an order in the 2008 case compelling the Debtors to fulfill their statutory duties and to cooperate and provide the information required for the audit, and had the Debtors actually refused to obey that order, the UST might have had a basis to seek relief under § 727(a)(6) or § 727(d)(3)." *Id.*

5. Despite this requirement of a finding that the debtor refused, rather than merely failed, to obey an order, courts do not always make the distinction. *See Baker*, 1990 WL 305559, at *4; *Mendoza*, 16 B.R. at 995–96.

comply with the order. *See Citizens Fid. Bank & Trust Co. v. Family Invs., Inc. (In re Family Invs., Inc.)*, 8 B.R. 572, 578 (Bankr.W.D.Ky.1981) ("Agreed orders are no less binding because they are based on compromise of the parties instead of a unilateral judicial act. The failure to comply with an agreed order is itself actionable. To require that a stay proceeding be held whenever an order supplanting it is violated would be redundant and superfluous. Accordingly, the debtor's challenge, though possibly meritorious in the absence of an agreement, cannot be considered as if no agreement was executed."). The UST has cited no authority for the proposition that a bankruptcy court must first make a finding that a basis exists to revoke the debtor's discharge under § 727(d)—such as § 727(a)(6)'s refusal to obey a court order—before it can revoke a discharge in accordance with an agreement between a debtor and a case trustee that does not require a finding of the debtor's refusal.

■ Even if the Court had been required to make a finding that the Debtor refused to comply with the Agreed Order before it revoked her discharge, it did not do so, and the Court would be unwilling to read such a finding into the Revocation Order merely to render § 523(a)(10) applicable. Moreover, § 727(d)(3) permits revocation only "after notice and a hearing[.]" *See* Debtor's Mot. at 3–4. The Bankruptcy Code defines this phrase in the following manner:

(1) "after notice and a hearing", or a similar phrase—

(A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but

(B) authorizes an act without an actual hearing if such notice is given properly and if—

(i) such a hearing is not requested timely by a party in interest; or

(ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act[.]

11 U.S.C. § 102(1). "The words 'after notice and hearing' denote notice and an opportunity for a hearing *as appropriate in the particular circumstances*, but a hearing—much less an evidentiary hearing—is not required in every instance." *Prebor v. Collins (In re I Don't Trust)*, 143 F.3d 1, 3 (1st Cir.1998). When the Debtor failed to turn over her 2010 tax return, the only notice that was necessary to revoke the Debtor's discharge *under the terms of the Agreed Order* was the Trustee's written notice of default providing her an opportunity to cure the default within 10 days. The Trustee provided that notice, but the Debtor did not cure the default—due either to an inability or a refusal on her part to do so. Furthermore, no hearing was necessary given the Debtor's agreement that, upon the filing of the Affidavit of Default, the Court would enter an order revoking the Debtor's discharge, without any showing of refusal being necessary. Had the Debtor challenged the revocation on the basis that she merely failed, rather than refused, to comply with the Agreed Order, that challenge, "though possibly meritorious in the absence of an agreement, cannot be considered as if no agreement was executed." *Family Invs.*, 8 B.R. at 578. But the Court notes that nothing in the Agreed Order provided that revocation of the Debtor's discharge would have any effect on the dischargeability of debts in a later bankruptcy case. Thus, on these facts, if the Trustee had submitted an order revoking the Debtor's discharge

under §§ 727(a)(6) and 727(d)(3), the Court would have declined to enter such an order.

■■■ There is no doubt that the Court entered the Revocation Order based on the terms of the Agreed Order and that the Agreed Order made only the Debtor's failure to comply, not her refusal, relevant for purposes of revoking her discharge. Under these circumstances, and given that "[t]he discharge exceptions are to be narrowly construed in favor of the debtor," *Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298, 306 (6th Cir. BAP 2004), the Court cannot apply § 523(a)(10) to hold the Common Debts nondischargeable.[6] Had the Trustee believed it important for the Court to revoke the Debtor's discharge under § 727(a)(6) with the attendant consequence of the Court's applying § 523(a)(10) in a later case, he could have taken the steps necessary for the Court to make a finding that the Debtor refused to obey the Agreed Order. Indeed, the debtors in *Klapp, Baker* and *Mendoza* were found—at the time their discharges were revoked—to have engaged in the misconduct that would later serve as the basis for excepting certain of their debts from discharge in a subsequent bankruptcy case. *See Klapp*, 706 F.2d at 1000; *Baker*, 1990 WL 305559, at *4; *Mendoza*, 16 B.R. at 995–96. Here, the Trustee apparently was satisfied with an order revoking the Debtor's discharge under the terms of the Agreed Order without any such finding.

It is possible, of course, that the Debtor in fact refused to obey the Agreed Order. But there is no reason to have a trial on that issue in this adversary proceeding. Any finding made at this point that the Debtor refused to obey the Agreed Order would not change the fact that the Debtor's discharge in the Prior Case was revoked based on her mere failure to comply with the Agreed Order, which does not constitute misconduct that would have resulted in her discharge being denied in the first place pursuant to § 727(a)(6). And the only purpose for making such a finding would be to render § 523(a)(10) applicable to the Common Debts. Thus, entering an order containing a finding of the Debtor's refusal to obey the Agreed Order would be tantamount to revoking the Debtor's discharge again, but this time doing so under § 727(d)(3). Under § 727(e)(2), a case trustee, creditor or the UST may seek the revocation of a discharge under § 727(d)(3) "before the later of—(A) one year after the granting of such discharge; and (B) the date the case is closed." 11 U.S.C. § 727(e)(2). The Court granted the Debtor's discharge on June 1, 2010, and the Prior Case was closed on November 18, 2011, so the deadline to seek to revoke the Debtor's discharge under § 727(d)(3) was November 18, 2011. The UST commenced this adversary proceeding on March 13, 2012, shortly after the Debtor filed her

---

**6.** If it is clear that a discharge was denied in a prior case based on an actual refusal to obey a court order, the order denying/revoking the discharge need not actually cite § 727(a)(6) to have the effect set forth in § 523(a)(10). *Cf. Cheng v. Wong (In re Wong)*, 2010 WL 1544415, at *2 (Bankr.S.D.N.Y. Apr. 19, 2010) ("[T]he Debtor argues that since the Denial Orders did not state the specific provision of § 727(a) that provided the basis for denying the Debtor a discharge, Judge Bohanon could have been relying on a provision other than those enumerated in § 523(a)(10). In other words, the Debtor could have been denied a discharge in the 2000 Case under §§ 727(a)(1), (8), (9), (10), (11) and/or (12). However, as the Plaintiff asserts in his papers and as discussed in detail below, the undisputed facts establish that Judge Bohanon could not have relied on §§ 727(a)(1), (8), (9), (10), (11) and/or (12). In fact, I find as a matter of law that the Debtor was denied a discharge in the 2000 Case pursuant to § 727(a)(2) and (4).").

74

petition in the Pending Case, but nearly four months after the November 18, 2011 deadline for requesting a revocation of the Debtor's discharge under § 727(d)(3).

### V. Conclusion

For the foregoing reasons, the Court **DENIES** the UST's Motion and **GRANTS** the Debtor's Motion. The Common Debts are not excepted from discharge under 11 U.S.C. § 523(a)(10). The Court will enter a separate judgment entry in accordance with this memorandum opinion.

**IT IS SO ORDERED.**